UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

RITA BUSCEMA,
individually, and on behalf of all others similarly situated,

       Plaintiff,

vs.                                                Case No. 19-CV-01089-MV-KK

WAL-MART STORES EAST LP, WAL-MART
STORES, INC., SPECTRUM BRANDS, INC.,
AND THE BLACK & DECKER CORPORATION,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Rita Buscema's ("Plaintiff's") Motion for Remand and Supporting Memorandum. Doc. 7. Defendants Wal-Mart Stores East LP, Wal-Mart Stores, Inc., Spectrum Brands, Inc., and The Black & Decker Corporation ("Defendants") filed a response in opposition [Doc. 12] and Plaintiff filed a reply [Doc. 13]. Having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken in part and will be **GRANTED IN PART**.

## BACKGROUND

### I. Plaintiff's Complaint

On September 19, 2019, Plaintiff filed a Class Action Complaint for Breach of Consumer Protection Statutes and for Injunctive Relief in the Second Judicial District Court in Bernalillo County. *See* Doc. 1 at Ex. 1 ("Complaint"). The Complaint alleges that Plaintiff purchased what was advertised as a Black & Decker coffeemaker at a Wal-Mart store in Albuquerque. Complaint at ¶ 3–4. Plaintiff later learned, however, that the coffeemaker was not actually a Black & Decker

product but was instead produced and warranted by a company called Spectrum. *Id*. at ¶ 7. She alleges that Defendants "deceptively and falsely stated and represented that the coffeemaker was a Black & Decker product" and that these "false and deceptive statements" allowed Defendants to charge customers, including Plaintiff, more money. *Id*. at ¶¶ 5 and 8. In so doing, Plaintiff alleges that Defendants violated two New Mexico laws: (1) the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 § 57-12-1 et seq.; and (2) the New Mexico False Advertising Act ("FAA"), NMSA 1978 § 57-15-1 et seq. *Id.* at ¶¶ 18–20.

The Complaint ultimately asserts two claims for relief. First, Plaintiff asserts an individual claim for money damages in the amount of $300 pursuant to NMSA 1978 § 57-12-10B. *Id.*at ¶ 30. Second, Plaintiff asserts a class claim for injunctive relief on behalf of a class that she is seeking to certify under NMRA (2019) 1-023C(4)(a). *Id*. at ¶¶ 22 and 30. The proposed class includes "all individual purchasers, for consumer purposes, of one or more Black & Decker-branded small kitchen appliances at any Wal-Mart store in the states of California, Florida, Hawaii, Kansas, Michigan, Nevada, New Hampshire, New Mexico, New York, Ohio, Tennessee, Texas, Utah or Vermont at any time within four years of the filing of this Complaint through the date of final approval of class certification." *Id*. at ¶¶ 22 and 30. Plaintiff requests an injunction on behalf of the class prohibiting Defendants from selling "Spectrum-produced/Black & Decker-branded small kitchen appliances" in the subject states "unless and until the Defendants should change their labeling of such small kitchen appliances so as to explicitly and unambiguously make clear to consumers that such small kitchen appliances are Spectrum products, warranted only by Spectrum, and are not Black & Decker products." *Id*. at ¶ 30. Importantly, Plaintiff explains that "[a]lthough [she] is now aware of Defendants' false and deceptive conduct… the class [she] seeks to represent, and the general public, would be significantly and irreparably harmed should Defendants be

allowed to continue their false and deceptive conduct." *Id*. at ¶ 17. In addition to the requested injunction, Plaintiff seeks an award of costs and attorney fees on behalf of the proposed class. *Id*. at ¶¶ 23 and 30.

## II. Defendants' Notice of Removal

On November 21, 2019, Defendants filed a Notice of Removal removing the case from the Second Judicial District to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. *See* Doc. 1 at 1. In the Notice, Defendants assert that this Court has subject-matter jurisdiction over Plaintiff's class action claim for injunctive relief under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), and over Plaintiff's individual claim for money damages under 28 U.S.C. § 1332(a), the federal diversity jurisdiction statute. *See* Doc. 1 at 3, 11.

Defendants first address the Court's jurisdiction under CAFA. *Id*. at 3–11. They submit that the lawsuit qualifies as a "class action" for the purposes of CAFA because it seeks to certify a class of plaintiffs under New Mexico law and is therefore filed under the state statute "authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* at 4 (citing 28 U.S.C. § 1332(d)). Defendants further submit that the suit satisfies CAFA's minimal diversity requirement because Plaintiff is a citizen of New Mexico while at least one defendant is not: Wal-Mart Stores East LP, for example, is a citizen of Delaware and Arkansas. *Id.* at 5 (citing § 1332(d)(2)(A)). Last, Defendants assert that the suit satisfies CAFA's $5,000,000 amount in controversy requirement. *Id.* at 6. First, they argue that it is "eminently possible that over $5 million from attorneys' fees alone would be at issue." *Id*. at 8. Defendants point to the fact that Plaintiff is seeking to recover such fees under the UPA and the fact that Plaintiff's counsel sought $2.3 million in attorneys' fees in a previous case against Defendants, *Puma v. Wal-Mart Stores, Inc.,* No. D-202-CV-2013-0632 (N.M. Dist. 2013), that dealt only with a single coffeemaker model

and involved a much smaller proposed class limited to customers in the State of New Mexico. *Id.* at 7. By contrast, Defendants argue, the instant case involves over 700 independent models of "small kitchen appliances" and a proposed class of customers covering 14 states. *Id*.

Defendants additionally argue that the cost of Plaintiff's proposed injunctive relief would exceed $5 million. *See* Doc. 1 at 9–11. They submit that an estimated 2.6 million Spectrum appliances would be affected and that a ban on sales would cost over $5,000,000 because each appliance sells for well over the price of $1.88 that it would take to reach that threshold amount. *See id*. at 9. Defendants further argue that the less intrusive remedy of applying corrective stickers to the appliances would still cost over $5,000,000 because "the cost of affixing corrective [stickers] to each unit is at least $2 per unit." *Id*. at 10.

Defendants next address the Court's jurisdiction over Plaintiff's individual claim under 28 U.S.C. § 1332(a). *Id.* at 11. First, they submit that the suit satisfies § 1332(a)'s "complete diversity" requirement because neither Plaintiff nor the members of the proposed class are citizens of any of the Defendants' states of citizenship: Delaware, Wisconsin, Maryland, and Arkansas. *Id*. Next, Defendants argue that the individual claim satisfies § 1332(a)'s "amount in controversy" requirement because "Plaintiff Buscema's own claim bears a value that exceeds $75,000." *Id*. In support, Defendants point to the fact that Plaintiff's counsel sought the recovery of attorneys' fees at a rate of $400 per hour in the previous case against Defendants, ultimately requesting $2.3 million for time billed. *Id*. at 12. Moreover, because the class in that case failed to recover, counsel sought the attorneys' fees solely on behalf of the two named plaintiffs, the only "prevailing parties" for the purposes of fee allocation under the UPA. *Id*. Defendants accordingly argue that there is an "eminent possibility… that Plaintiff and her counsel will seek to recover more than $75,000 in fees solely attributable to her own claim." *Id*.

### III.     Plaintiff's Motion for Remand

On December 20, 2019, Plaintiff filed the instant Motion for Remand. Doc. 7. In it, she asks the Court to remand this case back to the Second Judicial District under 28 U.S.C. § 1447 on the ground that the Court lacks subject-matter jurisdiction over her claims. *Id*. at 1. First, Plaintiff argues that her class action claim must be remanded because she lacks Article III standing to pursue it in federal court. *Id*. at 3. More specifically, she argues that she lacks standing to pursue injunctive relief on behalf of the proposed class because, having discovered Defendants' deceptive practices, she is no longer at risk of being harmed by their conduct. *Id*. In support, Plaintiff points to caselaw holding that "claims for prospective relief require a continuing injury" *Id*. at 4 (quoting *Baca v. Colorado Dept. of State*, 935 F.3d 887 (10th Cir. 2019)). She also points to cases holding that a named plaintiff in a class action must have standing (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)) and that a plaintiff must have Article III standing with respect to each form of relief sought in federal court (citing *Baca*, 935 F.3d at 908). *Id*.

Second, Plaintiff argues that this Court also lacks subject-matter jurisdiction over her individual claim because that claim does not meet the $75,000 amount in controversy requirement in 28 U.S.C. § 1332(a). *Id*. at 7. She argues that while attorneys' fees may be included in the amount in controversy, in a class action context such fees must be "allocated as among all potential class members on a pro rata basis and cannot be allocated specifically to the individual plaintiff." *Id*. (citing *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001) *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014)). Because the proposed class in this case includes "hundreds of thousands of members," Plaintiff argues that "the amount of attorney fees attributable to each class member on a pro rata basis could not begin to approach $75,000." *Id*. at 8.

Finally, Plaintiff argues that the Court should award her the costs and attorneys' fees she incurred preparing the instant Motion to Remand because "Defendants lacked an objectively reasonable basis" for removing the case to federal court. *Id*. at 9.

Defendants make several arguments in response. Doc. 12. First, they argue that they were not obligated to plead Article III standing in their Notice of Removal and "[i]t is therefore a distraction for Plaintiff to focus so heavily on Article III standing, when the central requirements of the removal statute are limited ones." *Id*. at 6. Defendants next argue that Plaintiff "undoubtedly" has standing to bring her individual claim for money damages [*id*. at 8–9] and that her alleged lack of standing to bring her class claim for injunctive relief does not affect the amount that is in controversy with regard to that claim [*id*. at 9–10]. Defendants further argue that if Plaintiff's class claim is dismissed for lack of jurisdiction, her individual claim would meet the amount-in-controversy requirement because the attorneys' fees cannot be pro-rated across the class "if the class does not have a live claim for relief." *Id*. at 11. Finally, Defendants argue that the Court should deny Plaintiff's request for attorneys' fees under § 1447(c) because their basis for removing the case to federal court was "more than reasonable." *Id*. at 13.

In reply, Plaintiff first argues that as the party seeking to invoke federal jurisdiction, Defendants bear the burden of establishing that this Court has Article III subject-matter jurisdiction over her class claim for injunctive relief. Doc. 13 at 2–3. She argues that Defendants have failed to carry that burden because they have failed to explain how the claim meets the three elements of Article III standing: injury, causation, and redressability. *Id*. at 3. Plaintiff further submits that where such standing is lacking, CAFA "does not and cannot confer jurisdiction on this Court." *Id*. at 1.

Plaintiff also replies to Defendants' arguments about the amount in controversy with regard to her individual claim. *Id*. at 4. She argues again that the Tenth Circuit's anti-aggregation rule in *Martin* controls and that the Court should not base its amount in controversy determination on whether the class claim will ultimately be remanded or dismissed. *Id*. at 5 (citing *Martin*, 251 F.3d at 1293). Instead, Plaintiff argues, the Court must assess the amount in controversy based on "the claims alleged in the complaint and not upon whether such claims will be successful." *Id*. at 6 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938)). Last, Plaintiff asserts that her arguments on Article III standing and § 1332(a)'s amount-in-controversy requirement are not at odds with each other. *Id*. at 6.

## STANDARD

### I.     Removal Under 28 U.S.C. § 1441

Under 28 U.S.C. § 1441(a), a defendant in a civil action brought in state court may remove the action to the federal district court "embracing the place where such action is pending" if the federal court would have had original jurisdiction over the suit. Class actions within the meaning of CAFA are eligible for such removal. *See* 28 U.S.C. § 1453. To affect a proper removal under the statute, a defendant must:

> [F]ile in the district court… a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). Courts including the Tenth Circuit have recognized a general presumption against removal. *See, e.g., Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) *abrogated on other grounds by Dart Cherokee*, 574 U.S. at 81. However, "no antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate the adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89 (citation omitted).

7

"The removing defendant bears of the burden of establishing that removal is proper." *Carroll v. City of Albuquerque*, 749 F. Supp. 2d 1216, 1222 (D.N.M. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008)).  The defendant must prove contested jurisdictional facts by a preponderance of the evidence.  *McPhail*, 529 F.3d at 953.

## II.      Removal on the Basis of Diversity Jurisdiction

Among the cases removable to federal court are those that invoke its original jurisdiction through diversity of citizenship.  *See* 28 U.S.C. § 1332.  To create so-called "diversity jurisdiction" under § 1332, a civil action must meet two basic requirements: (1) it must have the requisite level of diversity of citizenship among its parties; and (2) it must place a specified amount of money in controversy.  *See* §§ 1332(a), (d)(2).

The level of diversity required to give rise to jurisdiction under § 1332 varies by the type of action involved.  *See id*.  Class actions proceeding under § 1332(d), CAFA, need only possess "minimal diversity," meaning that "any member of [the] class of plaintiffs is a citizen of a State different from any defendant."  *See Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009).  However, non-class actions proceeding under § 1332(a) must have "complete diversity," meaning that "no plaintiff may be a citizen of the same state as any defendant."  *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).  A corporation is deemed to be a "citizen" of every state and foreign state in which it has been incorporated as well as the state or foreign state in which it has its "principal place of business."  § 1332(c).  An action is a "class action" for the purposes of § 1332 if it was "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  § 1332(d)(1)(B).

Section 1332 also creates different "amount in controversy" requirements for class and non-class actions. *See* § 1332(a), (d)(2). To give rise to federal jurisdiction under CAFA, a class action must place more than $5,000,000 in controversy. § 1332(d)(2). To give rise to jurisdiction under § 1332(a), however, an individual action need only place more than $75,000 in controversy. § 1332(a). The amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail*, 529 F.3d at 953. When a plaintiff's complaint states a specific amount in controversy, that amount should be accepted if made in good faith. *See Dart Cherokee*, 574 U.S. at 84 (citing 28 U.S.C. § 1446(c)(2)). When a complaint does not state a specific amount in controversy, a defendant's notice of removal may do so. *Id.* (citing § 1446(c)(2)(A)). The notice of removal "need not contain evidentiary submissions" to adequately plead the amount in controversy; it need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.*, at 84, 89. This is not a high bar, as the Tenth Circuit has recently explained: the proponent of federal jurisdiction need only show that "a fact finder *might* legally conclude" that damages exceed the statutory amount. *Hammond v. Stamps.com*, 844 F.3d 909, 912 (10th Cir. 2016) (emphasis in original) (citations omitted). In other words, "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed [the jurisdictional amount]… the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id.* at 914 (citations omitted).

A reasonable estimate of attorneys' fees may be included in the amount-in-controversy calculation where their recovery is permitted by statute. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)). Moreover, where a plaintiff is seeking injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver.*

9

*Comm'n*, 432 U.S. 333, 347 (1977).  The Tenth Circuit follows what has commonly been referred to as the "either viewpoint rule," which considers either the value to the plaintiff or the cost to defendant of injunctive relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum.  *Justice v. Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir.1991); *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).

Courts also follow a complex set of rules in determining what can and cannot be aggregated towards the total amount in controversy in a given case.  A plaintiff cannot, for example, "aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement." *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1106 (D.N.M. 2017) (citations and internal quotations omitted).  A plaintiff can, however, aggregate multiple claims against a *single* defendant, "even if the claims are entirely unrelated." *Id*.  Whether multiple plaintiffs can aggregate their claims against a single defendant depends on whether the claims are "separate and distinct." *Id*. (citing *Martin*, 251 F.3d at 1292).  Applying this principle, the Tenth Circuit in *Martin* held that attorneys' fees in a class action cannot be aggregated and attributed entirely to the named plaintiffs in order to meet § 1332's amount in controversy requirement.  251 F.3d at 1293.  The Court noted in a footnote, however, that its holding might not apply if the state statute under which fees are sought allows for those fees to be awarded solely to the class representatives.  *Id*. at 1293 n.7.  After *Martin* was decided, CAFA also changed the federal diversity jurisdiction statute to allow for class members in a qualifying class action to aggregate their claims in order to meet the newly established $5,000,000 amount in controversy requirement in § 1332(d).  *See* § 1332(d)(6).

### III. Article III Standing

For an action to be properly removable to federal court, it must also satisfy "Article III's justiciability requirements." *See Mach v. Triple D Supply, LLC*, 773 F. Supp. 2d 1018, 1023 (D.N.M. 2011) (citations omitted). One such requirement is that the plaintiff have standing to bring the suit, an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing has three elements: (1) the plaintiff suffered a concrete and particularized "injury in fact" that is "actual and imminent" rather than "conjectural or hypothetical;" (2) there is a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable" to the challenged action; and (3) it is likely that the injury will be redressed by a favorable decision. *Id.* at 560–61 (internal citations and quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561 (citations omitted).

A named plaintiff must personally have standing to bring a claim on behalf of absent class members; she cannot rely on potential class members' injuries to establish standing. *See Warth*, 422 U.S. at 502 ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *see also Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1176–77 (D.N.M. 2016) (listing cases). Put another way, a plaintiff cannot "proceed as a private attorney general seeking to enforce… statutes on behalf of the general public." *Nike, Inc. v. Kasky*, 539 U.S. 654, 661 (2003) (Stevens, J., concurring). A plaintiff must also demonstrate standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see also Baca*, 935 F.3d at 908. For this reason, a court cannot

overcome a claim's lack of constitutional standing by exercising supplemental jurisdiction over it. *See Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006).

Courts have long held that while "standing for retrospective relief may be based on past injuries… claims for *prospective* relief require a continuing injury." *Baca*, 935 F.3d at 909–10 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109–10 (1983)) (emphasis added). To obtain prospective relief, a plaintiff must accordingly show "a credible threat of future harm." *Baca*, 935 F.3d at 910 (citing *Ward v. Utah*, 321 F.3d 1263, 1267–69 (10th Cir. 2003)). In other words, a plaintiff cannot maintain an injunctive action "unless he or she can demonstrate a good chance of being… injured in the future." *Facio v. Jones*, 929 F.3d 541, 544 (10th Cir. 1991).

Because "injury in fact is a constitutional requirement… Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 147–48 (2016) (citations omitted). An action removed to federal court under CAFA must therefore be remanded to state court if the plaintiff lacks Article III standing. *See, e.g., Patton v. Experian Data Corp.*, No. SACV 15-1871 JVS, 2016 WL 2626801, at *6 (C.D. Cal. May 6, 2016) (unreported) (remanding case removed under CAFA back to state court for lack of Article III standing).

## IV. Remand Under 28 U.S.C. § 1447

Federal courts may remand improperly removed actions back to state court under 28 U.S.C. § 1447. The Tenth Circuit has recognized two grounds for remand under the statute: (1) a lack of subject-matter jurisdiction; and (2) a defect in the removal procedure. *See Miller v. Lamberth*, 443 F.3d 757, 759 (10th Cir. 2006) (citations omitted). Procedural defects must be raised within 30 days after the defendant files the notice of removal; a lack of subject matter jurisdiction can be raised at any time before final judgment. § 1447(c).

Some federal courts have interpreted § 1447 to require them to remand an *entire case* if they lack jurisdiction over any of the claims asserted therein. *See, e.g., Jackson v. Wal-Mart Stores Tex.*, 925 F. Supp. 2d 810, 812–15 (N.D. Tex. 2013) (analyzing the "plain text of the removal statute and the policies underlying it" and concluding that "remand of the entire case is proper."). However, in *Wisconsin Department of Corrections, et. al., v. Schacht*, 524 U.S. 381, 391 (1998), the Supreme Court rejected this interpretation of § 1447, noting that an "ordinary reading" of the statute suggests that the remand of an entire case is only required when subject-matter jurisdiction is lacking over the entire case. *See id.* at 392. The Court then noted that § 1447 could conceivably be read to provide for the remand of "a claim within a case" as well as the entire case. *Id.* At least two circuits have accordingly recognized that a partial remand under § 1447(c) is an appropriate remedy where a district court lacks jurisdiction over some, but not all, of the claims removed to it under § 1441(a). *See Lee v. American Nat. Ins. Co.*, 260 F.3d 997, 1002, 1007 (9th Cir. 2001) (holding that "a district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it" and that "[a] case that is properly removed in its entirety may nonetheless be effectively split up when it is subsequently determined that some claims cannot be adjudicated in federal court."); *Shaw v. Marriott Intern., Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010) (rejecting plaintiff's argument for remand of entire case and stating that "[t]he federal court may hear the claims for which federal jurisdiction exists.") (citing *Lee*, 260 F.3d at 1006). Several district courts have also ordered partial remands where one or more of the claims removed to them do not belong in federal court. *See, e.g., Cal. v. N. Tr. Corp.*, No. 12-CV-01813 DMG, 2013 WL 1561460, at *6 (C.D. Cal. Apr. 10, 2013) (unreported) (finding a partial remand the appropriate remedy and remanding two claims to state court for lack of standing while exercising diversity jurisdiction over other claims); *Climer v. Twin City Fire Ins. Co.*, No. 3:04-

CV-0552 G, 2004 WL 1531796, at *6 (N.D. Tex. Jul. 8, 2004) (unreported) (remanding one claim as improperly removed but denying remand as to other claims).

A federal court remanding a case back to state court can order the removing party to pay "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." § 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("*Martin II*"). Where the defendant had an "objectively reasonable basis" for removing the case to federal court under § 1441, a request for attorneys' fees should be denied. *Id.*

## DISCUSSION

For the reasons stated below, the Court agrees with Plaintiff that her class action claim for injunctive relief must be remanded to the Second Judicial District for lack of Article III standing. The Court does not find any jurisdictional defects with regard to her individual claim for money damages, however, and will accordingly deny her request for remand as to that claim. While the Court recognizes that such a partial remand is unusual, it finds that a partial remand is the most appropriate remedy in this situation under the caselaw. *See Schacht*, 24 U.S. at 391–92; *Lee*, 260 F.3d at 1002, 1007; *Shaw*, 605 F.3d at 1044. Finally, the Court finds that Defendants' removal of the case was not so unreasonable as to warrant an award of costs and fees under § 1447(c).

### I.     Plaintiff's Class Claim for Injunctive Relief

First, the Court finds that Plaintiff's class claim for injunctive relief must be remanded to state court for lack of federal subject-matter jurisdiction. *See* § 1447(a); *Miller*, 443 F.3d at 759. More specifically, the class claim does not make out a justiciable "case or controversy" within the meaning of Article III because Plaintiff lacks standing to bring it on behalf of the proposed class. *Lujan*, 504 U.S. at 560. Plaintiff's lack of standing with regard to this claim is apparent on the

face of her complaint. There, she acknowledges that she is not at risk of being harmed again by Defendants because she "is now aware" of their "false and deceptive conduct." Complaint at ¶ 17. Under well-established law, the fact that Plaintiff is no longer at risk of being harmed by the conduct she seeks to enjoin deprives her of standing to seek prospective relief. *See Baca*, 935 F.3d at 909–10 ("claims for prospective relief require a continuing injury"); *Facio*, 929 F.3d at 544 (a plaintiff cannot maintain an injunctive action "unless he or she can demonstrate a good chance of being… injured in the future.").

Plaintiff's lack of standing is also fatal to the class claim as a whole; it cannot proceed on the basis of standing that the proposed class members may or may not have. *See Warth*, 422 U.S. at 502 ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). In seeking to protect not herself but the putative class members and "the general public" from Defendants' conduct [Complaint at ¶ 17], Plaintiff is acting "as a private attorney general… seeking to enforce statutes on behalf of the general public." *Nike*, 539 U.S. at 661. Under well-established standing principles, that is not allowed in federal court. *Id*.

The Court notes that Defendants never directly addressed Plaintiff's apparent lack of standing to bring the class claim in their response to her Motion to Remand other than to state that they were not required to affirmatively plead Article III standing in their Notice of Removal. Doc. 12 at 5–6. Even if true, that does not obviate the need for standing to *exist*, nor does it render the issue of Article III standing a "distraction" as Defendants suggest. *Id*. at 6. To the contrary, and as Plaintiff states, standing is an "essential and unchanging part of the case-or-controversy requirement of Article III" that cannot be erased or superseded by statute. *Lujan*, 504 U.S. at 560; *Spokeo*, 136 S. Ct. at 1547–48. Nor can this Court cure Plaintiff's lack of standing by exercising

supplemental jurisdiction over the class claim under 28 U.S.C. § 1367 because doing so would effectively invalidate the requirement that she demonstrate standing for each form of relief sought. *See Daimler-Chrysler Corp.*, 547 U.S. at 351–52.

Because Plaintiff lacks Article III standing to bring her class claim in federal court, it does not fall within this Court's original jurisdiction and its removal under § 1441(a) was therefore improper. The Court will accordingly remand the claim back to the Second Judicial District under § 1447(a) for lack of subject-matter jurisdiction.

## II.     Plaintiff's Individual Claim for Money Damages

As noted above, the remand of Plaintiff's class claim does not by itself mark the end of this case in federal court: her individual claim should nevertheless remain as long as it falls within this Court's original jurisdiction. *See Schacht*, 524 U.S. at 391; *Lee*, 260 F.3d at 1002. The Court finds that it does.

First, as Plaintiff acknowledges, her individual claim does not suffer from the same standing problems that require the remand of her class claim. *See* Doc. 13 at 4. Where Plaintiff's class claim seeks prospective relief from future injuries that she is not at risk of suffering, her individual claim seeks *retrospective* relief for an injury that she has already suffered. *See* Complaint at ¶ 8 (alleging that Plaintiff paid more for the coffeemaker she purchased from Defendants because she believed it was a Black & Decker product). Plaintiff therefore has Article III standing to pursue her individual claim. *See Baca*, 935 F.3d at 909–10 ("A plaintiff's standing for retrospective relief may be based on past injuries.") (citations and internal quotations omitted).

Plaintiff's individual claim also satisfies § 1332(a)'s requirement of "complete diversity." *See Grynberg*, 805 F.3d at 905. As Defendants establish in their Notice of Removal, Plaintiff is a citizen of New Mexico, while Defendants are citizens of Delaware, Wisconsin, Maryland, and

Arkansas. Doc. 1 at 11. Further, Defendants' states of citizenship do not intersect with any of the states of Plaintiff's proposed class members. *See* Complaint at ¶ 22.

The only contested issue is whether Plaintiff's individual claim meets § 1332(a)'s $75,000 amount-in-controversy requirement. Keeping in mind that Defendants need only present a "plausible allegation" that an amount in excess of the jurisdictional threshold is in controversy, *Dart Cherokee*, 574 U.S. at 89, and that afterwards the case "belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much," *Hammond*, 844 F.3d at 914 (emphasis added), the Court finds that the amount-in-controversy requirement is satisfied. As Plaintiff acknowledges, a reasonable estimate of attorneys' fees may be included in the amount-in-controversy calculation. *See* Doc. 7 at 7; *see also Miera*, 143 F.3d at 1340. Plaintiff also included a request for attorneys' fees in her Complaint. *See* Complaint at ¶ 30.

The Court finds the requested attorneys' fees decisive because Defendants have plausibly alleged that such fees could exceed $75,000 on Plaintiff's individual claim alone. *See* Doc. 1 at 12–13. As Defendants explain, if Plaintiff's counsel were to bill at the same rate they billed in the *Puma* case–$400 per hour–they would hit the jurisdictional threshold in 187.5 hours, or in 93.75 hours with the multiplier they sought in *Puma*. *See* Doc. 1 at 12. Given the complexity of civil litigation, the Court cannot say that it is "legally impossible" for Plaintiff's counsel to spend that much time litigating the individual claim in this case. *Hammond*, 844 F.3d at 914. This is especially true given the fact that Plaintiff's counsel apparently spent at least 2,875 billable hours on the less-complex *Puma* case, as demonstrated by their request for over $2.3 million in attorneys' fees there. *See* Doc. 1 at 12. Nor does the Court find Plaintiff's assertion that *Puma* will have issue-preclusive effect in this case dispositive; as Defendants point out, the state court's ruling in *Puma* could be reversed on appeal or this Court could find that it lacks preclusive effect in the

instant case. *Id*. at 8. An award of attorneys' fees in excess of $75,000 remains plausible. *Dart Cherokee*, 574 U.S. at 89.

Finally, the Court is not persuaded by Plaintiff's argument that the Tenth Circuit's decision in *Martin* requires that any attorneys' fees she may recover be allocated on a pro-rata basis across all of the hundreds of thousands of individuals in the proposed class. Doc. 7 at 7–8. As the Court noted before, *Martin* provides for an exception to its general anti-aggregation rule where the state statute under which the attorneys' fees are sought allows for those fees to be awarded solely to the class representatives. *Id*. at 1293 n.7. Such appears to be the case here: under the UPA, attorneys' fees may be awarded to a party complaining of an unfair trade practice "if the party prevails." *See* NMSA 1978 § 57-12-10(C). That statutory language leaves open the possibility that Plaintiff alone could be entitled to recover attorneys' fees if she prevails on her individual claim but the class fails to recover on the class claim. *See id*. This scenario is not merely hypothetical: according to Defendants' Notice of Removal, it is exactly what happened in *Puma*. *See* Doc. 1 at 12. As a result, Plaintiff's counsel ended up requesting all $2.3 million in attorneys' fees on behalf of the two named plaintiffs in *Puma*, the only "prevailing parties" in that case. *Id*. Given the outcome in *Puma* and the language of the UPA, the Court finds it entirely plausible that Plaintiff alone could recover all of the attorneys' fees in this case. *Martin* is therefore not controlling, *see id.* at 1293 n.7, and Defendants have plausibly alleged that Plaintiff's individual claim satisfies § 1332(a)'s amount-in-controversy requirement.

Because Plaintiff has Article III standing to bring her individual claim in federal court, and because Defendants have established that the claim satisfies § 1332(a)'s jurisdictional requirements, it was properly removed to this Court under § 1441(a). The Court accordingly lacks

grounds to remand the claim to state court under § 1447.  Plaintiff's Motion will be denied as to this claim.

## III. Attorneys' Fees Under 28 U.S.C. § 1447(c)

Because the Court will not be remanding Plaintiff's individual claim for money damages, she is not entitled to costs and fees with respect to the removal of that claim.  *See* § 1447(c).  Nor does the Court find that Defendants' removal of Plaintiff's class claim was so unreasonable as to warrant an award of attorneys' fees incurred as a result of the removal.  *See Martin II*, 546 U.S. at 141 (noting that "the standard for awarding fees should turn on the reasonableness of the removal.").  Although Defendants ultimately failed to establish Plaintiff's Article III standing with respect to that claim, the claim appears to have satisfied the remaining jurisdictional requirements of removal under CAFA.  *See* § 1332(d).  The Court accordingly will deny Plaintiff's request for costs and attorneys' fees under § 1447(c).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Remand and Supporting Memorandum [Doc. 7] is hereby **GRANTED IN PART**.  Plaintiff's class action claim for injunctive relief is **REMANDED** back to the Second Judicial District Court in Bernalillo County under 28 U.S.C. § 1447(a) for lack of subject-matter jurisdiction, and the Clerk of this Court is directed to remand that claim to the Second Judicial District Court.  Having been properly removed under 28 U.S.C. § 1441(a), Plaintiff's individual claim for money damages will remain in this Court for further proceedings.

Dated this 16th day of April, 2020.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE